IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SERENITY LANE | Case No. 6:14-cv-00038-TC |
| Plaintiff, | FINDINGS & RECOMMENDATION |
| v. | |
| NETSMART TECHNOLOGIES, INC. | |
| Defendant. | |

COFFIN, Magistrate Judge:

  Defendant, Netsmart Technologies Inc., moves the court for an order to dismiss certain claims brought against it (#44). Defendant also moves the court for an order to determine the sufficiency of plaintiff's answers to requests for admissions (#51). Having considered the motions and related materials, defendant's Renewed Motion to Dismiss Plaintiff's Complaint (#44) should be granted in part and denied in part and defendant's Motion to Determine the Sufficiency of Plaintiff's Answers to Requests for Admissions (#51) should be denied.

1 - FINDINGS AND RECOMMENDATION

FACTUAL BACKGROUND

The underlying dispute in this case arose out of an agreement between plaintiff, Serenity Lane, and Sequest Technologies, Inc. (Sequest), whereby Sequest agreed to provide plaintiff with totally integrated electronic medical record (TIER) software customized for plaintiff's use. Pl.'s Compl., 2. Sequest was then acquired by defendant in October 2011. Id. Plaintiff alleges that it paid Sequest and defendant $518,308.41 for the development, licenses, and customization of the TIER software and that Sequest and defendant breached the agreement by failing to deliver the TIER software. Id. On January 8, 2014, plaintiff filed a complaint with this court stating that defendant now owes it the obligations of Sequest under the agreement. Pl.'s Compl., 2. Plaintiff's complaint makes four claims for relief. Id.

Plaintiff's first claim for relief seeks damages of $518,308.41 for the TIER software it claims was never delivered, $654,242 for the time it spent performing its obligations under the agreement, $147,937.61 for computer hardware purchases that became obsolete or unusable as the result of defendant's alleged failure to deliver the software, and prejudgment interest. Id. at 3.

Plaintiff's second claim for relief claims that defendant violated the Uniform Commercial Code (UCC). Specifically, plaintiff argues that the TIER software is a "good" as defined under ORS 72.1050 and that it rejected the software pursuant to ORS

2 - FINDINGS AND RECOMMENDATION

72.6010, Oregon's UCC statute that addresses buyers' rights upon improper delivery of goods. Id. Plaintiff's second claim for relief seeks the same damages and prejudgment interest as claim one, with one exception; plaintiff's second claim for relief seeks an additional thirty dollars, or $654,272.00, for the time it spent performing its obligations under the agreement. Id.

Plaintiff's third claim for relief reasserts that defendant never delivered, and it never received, the TIER software because the software "was never completed, was not usable, and did not meet the requirements of the contract." Id. at 4. Consequently, plaintiff seeks a declaration from this court stating that it is not bound to the 2006 contract because the TIER software was never delivered or received. Id.

Plaintiff's fourth claim for relief asserts that in the alternative, if the court declares that it is bound to the contract, pursuant to the terms of the contract, the TIER software is not subject to repair or replacement and defendant is obligated to refund the amount plaintiff paid for the TIER software in the sum of $518,308.41, plus prejudgment interest. Id. at 5.

LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint in federal court must

3 - FINDINGS AND RECOMMENDATION

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a plaintiff must aver in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order to meet that standard, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp., 550 U.S. at 555-556.

All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). This court is not, however, required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).

///

4 - FINDINGS AND RECOMMENDATION

## DISCUSSION

Defendant requests that this court finds the 2006 contract binding on both parties and moves the court to dismiss plaintiff's claims for incidental and consequential damages, prejudgment interest, and its second, third, and fourth claims for relief. Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, 16. Defendant also moves this court to order several of plaintiff's answers to its requests for admissions be admitted because they "violate plaintiff's responsibilities for responding to requests for admission under Fed. R. Civ. P. 36(a)(4)." Def.'s Mot. to Determine the Sufficiency of Pl.'s Answers to Req. for Admis., 2.

I. <u>Applicability of the 2006 Contract and Plaintiff's Third Claim for Relief</u>

Defendant argues that plaintiff is bound to the terms of the 2006 contract because the TIER software, as it is defined in the contract, was delivered to plaintiff in the method the parties agreed to in the contract, which was signed by Peter Asmuth, plaintiff's then Chief Executive Officer. Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, 2. Moreover, defendant asserts that during the discovery process, plaintiff confirmed that the TIER software product was "installed, viewed, and tested by plaintiff's employees, agents, and representatives on

5 - FINDINGS AND RECOMMENDATION

plaintiff's computer systems." Id. at 2-3. Defendant asserts that because plaintiff confirmed that the TIER software was installed, viewed, and tested on plaintiff's computer systems, plaintiff's argument that it is not bound to the 2006 contract because defendant never delivered the TIER software is in error and, thus, plaintiff's third claim for relief should be dismissed.

Plaintiff argues that "although [it] could view parts of the [TIER] software base demonstration product on some of their computers and on the FTP site" it "den[ies] that it was the TIER software product as described in the agreement." Pl.'s Mem. in Opp'n to Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 6. Plaintiff, therefore, argues that "a question of fact exists whether the [TIER software] product was ever 'delivered and received'" and that "questions of fact cannot be resolved at the Rule 12(b)(6) stage." Id. at 2. Moreover, plaintiff argues that if the court rules on whether the contract is binding, "it must do so applying a Rule 56 summary judgment standard and interpret the contract and extrinsic evidence in a light most favorable to the plaintiff." Id. at 2.

Section I, Paragraph 1.5 of the 2006 contract states that "[u]pon delivery and receipt of the TIER software product, [plaintiff] agrees to be bound by this contract and accept the TIER software product subject to the Limited Warranty provisions."

6 - FINDINGS AND RECOMMENDATION

Decl. of Andrea Coit in Supp. of Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, 22, 35. Further, Section I, Paragraph 1.2 of the 2006 contract defines the TIER software product as "any and all Sequest computer software, the associated media, and any printed materials and any online or electronic documentation." Id.

Here, the record reveals that defendant delivered at least some version of the TIER software product to plaintiff and that plaintiff installed that version of the TIER software on over 75 machines it owned, controlled, or leased. Id., Ex. 2; 11-13; Supplemental Decl. of Andrea Coit in Supp. of Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, Ex. 10; 1, 4, 13-14. The record further reveals that plaintiff purchased 80 additional days of customization services from defendant on November 19, 2009 to further customize the version of the TIER software that was installed on its machines after the time allotted under the 2006 contract had expired. Id. Ex. 6; 1-2. Finally, the record reveals that from 2009-2012, plaintiff accessed components of the TIER software through a secure file transfer protocol (FTP) site. Id.

Consequently, because Section I, Paragraph 1.2 of the 2006 contract defines the TIER software product broadly to include any and all Sequest computer software, and the record reveals that

7 - FINDINGS AND RECOMMENDATION

defendant delivered at least some Sequest computer software that plaintiff installed, tested, and accessed through defendant's FTP site, there is no question of fact regarding whether the TIER software product was delivered and received. As such, because defendant delivered, and plaintiff received, TIER Software products as they are broadly defined in Section 1, Paragraph 1.2 of the 2006 contract, this court finds that, pursuant to Section I, Paragraph 1.5 of the 2006 contract, the 2006 is contract binding on both parties. Therefore, this court finds that plaintiff's third claim for relief, that it is not bound to the contract because the TIER software was never delivered or received, should be dismissed.

## II.  Incidental and Consequential Damages and Prejudgment Interest

Defendant argues that plaintiff's claims for incidental and consequential damages must be dismissed because they are precluded by the terms of the 2006 contract. Def.'s Renewed Mot. to Dismiss, 3. Defendant also argues that prejudgment interest must be dismissed because Illinois law governs its contractual relations with plaintiff and prejudgment interest is not recoverable under Illinois law under the circumstances presented in this case. Id.

Plaintiff argues that it "has adequately pled consequential damages and prejudgment interest as part of [its] breach of contract claim." Pl.'s Mem. in Opp'n to Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 17.

8 - FINDINGS AND RECOMMENDATION

A.  Incidental and Consequential Damages

Plaintiff argues that "the only basis for limitations on consequential damages would come from the contract, which is not binding on the [parties]." Pl.'s Opp'n to Def.'s Mot, to Dismiss Pl.'s Compl., 6.

The 2006 contract states that:

> In no event will [defendant] be liable for any indirect, special, incidental, cover, or consequential damages arising out of the use of or inability to use the TIER software product, user documentation or related technical support, including, without limitation, damages or costs relating to the loss of profits, business, goodwill, data, or computer programs, or other pecuniary loss, even if [defendant] is advised of the possibility of such damages. In no event will [defendant's] liability exceed the amount paid by [plaintiff] for the TIER software product license fee.

Coit Decl., Ex. A; 6.

Here, as stated above, the parties are bound by the terms of the 2006 contract. Further, the contract clearly states that defendant will not be liable for any incidental or consequential damages and that it's liability will not exceed the amount paid by plaintiff for the TIER software. Therefore, this court finds that plaintiff's claims for incidental and consequential damages in claims one and two should be dismissed because they are precluded by the terms of the 2006 contract.

///

A.  Incidental and Consequential Damages

Plaintiff argues that "the only basis for limitations on consequential damages would come from the contract, which is not binding on the [parties]." Pl.'s Opp'n to Def.'s Mot, to Dismiss Pl.'s Compl., 6.

The 2006 contract states that:

> In no event will [defendant] be liable for any indirect, special, incidental, cover, or consequential damages arising out of the use of or inability to use the TIER software product, user documentation or related technical support, including, without limitation, damages or costs relating to the loss of profits, business, goodwill, data, or computer programs, or other pecuniary loss, even if [defendant] is advised of the possibility of such damages. In no event will [defendant's] liability exceed the amount paid by [plaintiff] for the TIER software product license fee.

Coit Decl., Ex. A; 6.

Here, as stated above, the parties are bound by the terms of the 2006 contract. Further, the contract clearly states that defendant will not be liable for any incidental or consequential damages and that it's liability will not exceed the amount paid by plaintiff for the TIER software. Therefore, this court finds that plaintiff's claims for incidental and consequential damages in claims one and two should be dismissed because they are precluded by the terms of the 2006 contract.

///

B.  Prejudgment Interest

Plaintiff argues that "prejudgment interest is available in this kind of case in Oregon, but not in Illinois" but "since the terms of the License Contract were never binding on the parties, the court is not bound to apply Illinois law to this dispute." Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 5; Pl.'s Mem. in Opp'n to Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 17. Plaintiff further argues that "regardless of whether there was a choice-of-law provision in a binding contract, Oregon law should apply in this case" because "in a federal diversity case, the court should follow the rules of the state in which the court sits to determine the choice of law [and] in this case that is Oregon law." Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 4.

Defendant argues that Illinois law governs the parties' transactions because they "fully negotiated [a] choice-of-law provision in the 2006 contract at Section I, Paragraph 11.3, which states that '[a]ll questions concerning the validity and operation of this Contract shall be governed by the laws of the State of Illinois.'" Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, 10 (citing Coit Decl., Ex. 3).

Defendant also argues that Illinois law is proper using a choice-of-law analysis because the State of Illinois has a substantial relationship to the parties and the transaction.

10 - FINDINGS AND RECOMMENDATION

Def.'s Renewed Mot. to Dismiss Pl.'s Compl., 11. Defendant specifically argues that Illinois has a substantial relationship to the parties and the transaction because its principal place of business is located in Lisle, Illinois, "the Serenity Lane project, which includes thousands of hours of work done by [it's] employees, was primarily completed in the State of Illinois," and 26 of the 42 people who worked on the Serenity Lane project currently live in Illinois. Id. Finally, defendant argues that because the application of Illinois law on the issue of prejudgment interest is not contrary to Oregon policy, the court should enforce the parties' contractual choice of law. Id.

When exercising jurisdiction based on diversity of citizenship, a district court must generally apply the choice of laws rules for the state in which it sits. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under Oregon law, there is a "foundational premise that the intention of the parties to a contract controls a courts interpretation of it." Capital One Bank v. Fort, 242 Or. App. 166, 171, 255 P.3d 508, 511 (2011) (citing Young v. Mobil Oil Corp., 85 Or. App. 64, 67, 735 P.2d 654 (1987)). Moreover, under Oregon law, "parties may include a choice-of-law provision in a contract, which a court will enforce" unless either: (a) the chosen state has no substantial relationship to the parties or the transaction; or (b) application of the law of the chosen

11 - FINDINGS AND RECOMMENDATION

state would be contrary to a fundamental policy of the state. <u>Capital One Bank</u>, 242 Or. App. at 171-172. Under Oregon law, prejudgment interest does not further a compelling public policy. <u>SDS Lumber Co. v. Allendale Mut. Ins. Co.</u>, 563 F. Supp. 608, FN8 (D.Or. 1983).

Here, as stated above, the 2006 contract is binding on both parties. Further, the record reveals that defendant's principal place of business, where a substantial amount of the contract was performed, is located in Lisle, Illinois, and that 26 of the 42 people who worked on the TIER software project currently live in Illinois. Consequently, this court finds that the State of Illinois has a substantial relationship to the parties and the transaction. Moreover, the record reveals that the application of Illinois law is not contrary to a fundamental policy of the State of Oregon. Thus, this court finds that prejudgment interest does not further a compelling public policy in Oregon and, therefore, the choice-of-law provision in the 2006 contract is enforceable. As such, this court finds that Illinois law governs all questions relating to the validity and operation of the 2006 contract.

Under Illinois law, prejudgment interest is recoverable only where contracted for or authorized by the Illinois Interest Act (IIA) or other statute. <u>Cont'l Cas. Co. v. Commonwealth Edison Co.</u>, 286 Ill. App. 3d 572, 577 (1st Dist. 1997) (citing <u>Steward v.</u>

12 - FINDINGS AND RECOMMENDATION

Yoder, 86 Ill. App. 3d 223, 225 (4th Dist. 1980)). The IIA permits the award of prejudgment interest only for:

> monies after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

815 ILCS 205/2.

Pursuant to Illinois law, and by extension the IIA, this court finds that the IIA does not provide for prejudgment interest under the circumstances presented in this case. Specifically, none of the subjects listed in the IIA are applicable here. Moreover, because, as stated above, the contract expressly states that defendant will not be liable to plaintiff for any damages in excess of the amount plaintiff paid to it for the TIER software, a plain reading of the contract reveals that prejudgment interest was not contracted for by the parties. Consequently, this court will not frustrate the original intentions of the parties. As such, this court finds that plaintiff's claims for prejudgment interest in its first, second, and fourth claims for relief should be dismissed.

III. Plaintiff's Second Claim for Relief Under the UCC

Defendant argues that plaintiff's second claim for relief under the UCC should be dismissed for failure to state a claim upon

13 - FINDINGS AND RECOMMENDATION

which relief may be granted. Def.'s Renewed Mot. to Dismiss, 3. Specifically, defendant argues that "plaintiff fail[ed] to allege any facts that would allow the court to infer that the agreements between the parties contemplated a sale of goods." Def.'s Mot. to Dismiss, 7. Defendant also argues that "the purpose of the agreements between the parties' is primarily for services, and any purpose related to goods is merely incidental." Id. at 8.

In support of its argument that the agreements between the parties' is primarily for services, defendant argues that "74 percent of the amount plaintiff alleges it paid for the 'development, licenses and customization' of the software can be attributed to services and support." Id. at 9-10. Moreover, defendant argues that "there was no sale of any goods in the agreement between the parties" because "Section 1.6 of the parties' 2006 Licensing Agreement expressly provides that title to the TIER software does not transfer to plaintiff, and that defendant retained ownership." Id. at 10.

As an initial matter, as stated above, the choice-of-law provision in the 2006 contract is enforceable and, thus, Illinois law governs all questions relating to the validity and operation of the contract. Moreover, under Illinois law, the "UCC applies only to 'transactions in goods.'" NIM Plastics Corp. v. Standex Int'l Corp., 11 F. Supp. 2d 1003, 1005 (N.D. Ill. 1998) (quoting 810 ILCS

14 - FINDINGS AND RECOMMENDATION

5/2-102). Further, under Illinois law, "if the contract's primary purpose is the sale of goods, then the entire contract falls within the ambit of the UCC." Id. (internal quotations omitted). However, in Illinois, the UCC does not apply to agreements between parties if the purpose of the agreement is for the performance of services, with goods incidentally involved. Id. The Illinois UCC defines goods as "all things . . . which are movable at the time of identification to the contract for sale," 810 ILCS 5/2-105(1), and defines a "sale" as "the passing of title from the seller to the buyer for a price." 810 ILCS 5/2-106(1).

Here, the 2006 contract reveals that the parties contemplated only a lease of the TIER software product, that title to the TIER software would not transfer to plaintiff, and that the majority of the money plaintiff alleges it paid defendant for the TIER software is attributable to services and support. Consequently, this court finds that the contract between the parties was primarily for the performance of services, with goods incidentally involved and, therefore, the UCC does not apply. As such, this court finds that plaintiff's second claim for relief should be dismissed.

IV. Plaintiff's First and Fourth Claim for Relief

Defendant argues that plaintiff's fourth claim for relief should be dismissed because it sets out a second breach of contract

15 - FINDINGS AND RECOMMENDATION

claim that is duplicative to plaintiff's first claim. Def.'s Renewed Mot. to Dismiss Pl.'s Compl. and Mem. in Supp. Thereof, 16.

Plaintiff argues that its fourth claim is pled in the alternative and is, therefore, not redundant. Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl., 10. Plaintiff further argues that its fourth claim for relief alleges that defendant breached the terms of the 2006 contract and that this allegation is not in its other claims because those claims are based on allegations that the terms of the 2006 contract do not apply. This court agrees.

Here, the record reveals that defendant's fourth claim for relief is not the same as plaintiff's first claim. Specifically, plaintiff's first through third claims are brought under the theory that the TIER software was never delivered, while plaintiff's fourth claim is brought in the alternative if the court declares that it is bound to the 2006 contract. Further, only plaintiff's fourth claim for relief states that the TIER software product is not subject to repair or replacement by defendant. Consequently, because, as stated above, the 2006 contract is binding and only plaintiff's fourth claim is brought in the alternative and applies under that context, this court finds that plaintiff's first claim for relief should be dismissed as moot, rather than plaintiff's fourth claim. Therefore, because this court finds that plaintiff's first claim should be dismissed, defendant's argument that the

16 - FINDINGS AND RECOMMENDATION

fourth claim is redundant is moot and, therefore, should be denied. However, as stated above in Section II, because Illinois law applies and prejudgment interest is not recoverable under the circumstances present in this case, this court finds that plaintiff's fourth claim for relief, insofar as it seeks prejudgment interest, should be modified by striking that component of the prayer for damages.

V.   Sufficiency of Plaintiff's Answers to Requests for Admission

Defendant argues that plaintiff gave numerous answers in response to its requests for admissions that do not comply with Fed. R. Civ. P. 36. Def.'s Mot. to Determine the Sufficiency of Pl.'s Answers to Req. for Admis., 3. Defendant, therefore, moves the court to order plaintiff's answers to its requests for admissions be admitted. Id. Defendant also argues that all "superfluous statements in the answers" should be ordered stricken. Id.

Plaintiff argues that its answers are sufficient under Fed. R. Civ. P. 36(a)(4) and that "if the court deems any responses to be insufficient, [it] requests an opportunity to amend those responses, rather than have them deemed admitted." Pl.'s Mem. in Opp'n to Def.'s Mot. to Determine the Sufficiency of Pl.'s Answers to Req. for Admis., 2.

17 - FINDINGS AND RECOMMENDATION

Fed. R. Civ. P. 36 allows litigants to request admissions as to a broad range of ultimate facts and application of law to fact. <u>Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n</u>, 333 F.Supp. 2d, 975, 984 (D.Or. 2004). "Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct," rather "they should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." <u>Marchand v. Mercy Med. Ctr.</u>, 22 F.3d 933, 936-37 (9th Cir. 1994).

Fed. R. Civ. P. 36(a)(6) enables a party to move the court to determine the sufficiency of an answer. Fed. R. Civ. P. 37(a)(3)(B) enables a party to move the court for an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses. "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). An evasive response is a response that does not "specifically deny the matter, or a response that does not set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." <u>Asea, Inc. v. Southern Pacific Transportation Co.</u>, 669 F.2d 1242 (1981) (internal quotations omitted). However, "even when a party's answer does not include such a statement, and thus fails to comply with the literal

18 - FINDINGS AND RECOMMENDATION

requirements of the Rule, courts generally order an amended answer, rather than deem the matter admitted." Id.

Here, whenever plaintiff objected to a request for admission of a fact, plaintiff admitted what it could and provided an explanation of why it could not admit to the request precisely as it was written by defendant. As such, plaintiff provided defendant with answers that comport with Fed. R. Civ. P. 36(a)(4). Consequently, defendant's motion that the court order plaintiff's answers to defendant's requests for admissions be admitted, and the "superfluous" statements in the answers be stricken, should be denied. Further, defendant's motion seeking the attorney's fees and costs it incurred in pursuit of its Motion to Determine the Sufficiency of Plaintiff's Answers to Requests for Admissions (#51) should also be denied.

## CONCLUSION

For the reasons stated above, defendant's Renewed Motion to Dismiss Plaintiff's Complaint (#44) should be GRANTED in part and DENIED in part. Specifically, this court finds that the 2006 contract is binding on both parties, the UCC does not apply, and plaintiff's claims for incidental and consequential damages, as well as prejudgment interest, should be dismissed. Consequently, this court finds that plaintiff's first, second, and third claim for relief, as well as its demand for prejudgment interest in its

fourth claim for relief, should be dismissed. Further, this court finds that defendant's Motion to Determine the Sufficiency of Plaintiff's Answers to Requests for Admissions (#51) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment of appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

Dated this \_\_\_5\_\_\_ day of May 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

20 - FINDINGS AND RECOMMENDATION